UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALAN ADAMS and Minor Child A.A., <br><br> Plaintiffs, <br><br> v. <br><br> KING COUNTY ET AL., <br><br> Defendants. | CASE NO. 2:25-cv-02256-JNW <br><br> ORDER |

Plaintiff Alan Adams's amended motion for temporary restraining order ("TRO") comes before the Court. Dkt. No. 4. The Court DENIES the motion for the reasons below.

## 1. BACKGROUND

This case arises from an ongoing family law matter in King County Superior Court. Adams asserts that beginning in 2022, he repeatedly requested accommodations from the court under the Americans with Disabilities Act ("ADA") to accommodate his brain injury. In February 2022, he submitted an accommodations request through his attorney, and his request was granted. Dkt. No. 1 ¶¶ 17–18. Among other accommodations, the court allowed him to have a

ORDER - 1

support person present in the courtroom with him and allowed in-person appearances subject to COVID-19 protocols to avoid use of screens. *Id*. Adams was dissatisfied with the order, believing the accommodations were insufficient. *Id*. ¶¶ 18–19. He alleges that the court failed to engage in the interactive process and to fully consider his specific limitations when deciding on accommodations. *Id*. ¶ 20.

Adams repeatedly attempted to alter the Court's provided ADA accommodations to no avail. Eventually, his case culminated in a four-day trial in which he represented himself. Adams asserts that he did not have a fair opportunity to present his case because the court refused to adopt or enforce certain disability accommodations. He alleges that "[f]rom 2023 through current, the King County Superior Court continues to conduct trial, enforcement, and property-transfer proceedings without an individualized ADA plan or interactive process in place, despite being on written notice of Plaintiff's disabilities and receiving repeated medical documentation." *Id*. ¶ 45.

Adams sued several King County Superior Court officials, including King County Superior Court Judges Jason Poydras, Aimee Sutton, and Richard Shah, for violating the ADA and his due process rights. Dkt. No. 1. After filing two TRO motions, *see* Dkt. Nos. 2 and 4, he filed this amended TRO motion and supporting memorandum, *see* Dkt. Nos. 4 and 7, asking the Court to "immediately stay[] all enforcement actions, contempt sanctions, property-transfer orders, parenting-time suspensions, financial collection, and any future enforcement hearings in *Adams v. McCarthy*, No. 20-3-06035-0 SEA." Dkt. No. 7 at 25. He argues that without a TRO,

ORDER - 2

he will continue to suffer the exacerbation of his neurological condition, loss of property and custody rights, and continued denial of access to the courts. *Id*. at 23.

## 2. DISCUSSION

### 2.1  Legal standard.

Federal Rule of Civil Procedure 65 authorizes preliminary injunctions and TROs when certain substantive and procedural requirements have been met. *See* Fed. R. Civ. P. 65. To obtain a TRO, the moving party must serve all motion papers on the nonmoving party unless the requirements of Rule 65(b)(1)—issuance of a TRO without notice—are met. LCR 65(b)(1); Fed. R. Civ. P. 65(b)(1). The Court may issue an ex parte TRO—meaning a TRO without notice to the adverse party—only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" *and* the movant certifies in writing "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)*; see also* LCR 65(b)(1) ("Unless the requirements of Fed. R. Civ. P. 65(b) for issuance without notice are satisfied, the moving party must serve all motion papers on the opposing party, by electronic means if available, before or contemporaneously with the filing of the motion and include a certificate of service with the motion."). "Motions for temporary restraining orders without notice to and an opportunity to be heard by the adverse party are disfavored and will rarely be granted." LCR 65(b)(1).

Even where these procedural requirements have been satisfied, a TRO remains an "extraordinary remedy that may only be awarded upon a clear showing

ORDER - 3

that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "[A] plaintiff seeking a [TRO] must make a clear showing that '[they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024) (quoting *Winter*, 555 U.S. at 20). These four elements—the *Winter* factors—apply whenever a preliminary injunction is sought. *Winter*, 555 U.S. at 20. To obtain relief, a plaintiff must "make a showing on all four prongs." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The first *Winter* factor, "[l]ikelihood of success on the merits[,] is the most important[.]" *Edge v. City of Everett*, 929 F.3d 657, 663 (9th Cir. 2019).

Where, as here, a party proceeds pro se, district courts must construe their filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But even so, pro se litigants remain subject to the stringent procedural and substantive rules that govern TROs. *See Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

### 2.2   Adams has not met the procedural requirements for an ex parte TRO.

Adams's motion fails to satisfy the procedural requirements of Rule 65(b) and Local Civil Rule 65(b)(1). It includes no certification indicating notice given to Defendants. It neither certifies "efforts made to give notice," nor provides "reasons why it should not be required." *See* Fed. R. Civ. P. 65(b)(1). It also fails to include any indication that irreparable injury is likely to occur before notice can be given.

ORDER - 4

Thus, the Court denies the motion for failure to comply with necessary procedural requirements.

**2.3  Even if Adams satisfied the procedural requirements for an ex parte TRO, injunctive relief would be unwarranted because he fails to demonstrate a likelihood of success on the merits.**

The Court also denies the motion on substantive grounds. As discussed above, the most important *Winter* factor is likelihood of success on the merits. Here, Adams is unlikely to succeed on the merits for several reasons, including that *Younger* abstention and judicial immunity likely preclude the relief his complaint requests. Additionally, Adams's Title II argument is lacking.

Under the *Younger* abstention doctrine, federal district courts must abstain from exercising jurisdiction over claims for equitable relief where: "(1) there is 'an ongoing state judicial proceeding'; (2) the proceeding 'implicate[s] important state interests'; (3) there is 'an adequate opportunity in the state proceedings to raise constitutional challenges'; and (4) the requested relief 'seek[s] to enjoin' or has 'the practical effect of enjoining' the ongoing state judicial proceeding." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (quoting *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014)); *see generally Younger v. Harris*, 401 U.S. 37 (1971). Where these four factors are met, federal courts must abstain from jurisdiction unless there is "a showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Arevalo*, 882 F.3d at 766.

Here, all four factors are likely met. The relief that Adams seeks is for this Court to enjoin his ongoing state family-court proceedings, including the enforcement of orders and judgments against him. Those proceedings indisputably implicate important state interests in matters of family law and policy. As for the third factor, Adams contends that the state court has shown a "reckless disregard" for his rights, *see* Dkt. No. 1 at 33, but his arguments do not establish a lack of opportunity to raise constitutional challenges in state court. *See generally* Dkt. No.7. . Accordingly, *Younger* abstention will likely require the Court to decline jurisdiction here, meaning Adams probably will not succeed on the merits of his claims.

Turning to judicial immunity. Adams names several King County Superior Court judges as defendants, but "[i]t is well settled that judges are generally immune from suit for money damages" when the suit concerns judicial acts. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) (explaining "absolute judicial immunity does not apply to non-judicial acts, i.e. the administrative, legislative, and executive functions that judges may on occasion be assigned to perform"). The Ninth Circuit has identified four factors relevant to deciding whether a particular act is judicial in nature:

> (1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity.

*Id.* (quoting *Meek v. Cnty. of Riverside*, 183 F.3d 962, 967 (9th Cir.1999)).

Adams's TRO motion focuses on Judge Poydras's conduct in holding hearings while his ADA requests were purportedly pending; he states that during one of these hearings, Judge Poydras only allowed for "ad-hoc breaks" and did not "stop to create an ADA plan." Dkt. No. 7 at 14. Judge Poydras told him that his "ADA and due process filings were 'not before the Court'" and held Adams in contempt. *Id*. Adams does not explain why he was found in contempt of court. *See id*. Conducting hearings, enforcing orders and judgments, and holding parties in contempt if necessary are core judicial functions, and the challenged conduct seems to arise out of Adams's confrontation with Judge Poydras while Judge Poydras was acting in his official capacity. *Meek*, 183 F.3d at 967. As Adams's allegations and arguments strongly suggest judicial immunity applies, he fails to show that he is likely to succeed on his claims.

Lastly, Adams's Title II argument is not convincing on this record. Title II of the ADA provides that no disabled individual "shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. "To state a prima facie case for a violation of Title II, a plaintiff must show: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Payan v. L.A. Comm. Coll. Dist.*, 11 F.4th 729, 737 (9th Cir. 2021) (citation modified).

There are several theories under which a plaintiff may pursue a Title II claim. Here, Adams advances a failure-to-accommodate claim; he argues that the Court's refusal to accommodate his disability has impeded his right to access the courts. Failure-to-accommodate claims are "focused on an accommodation based on [the plaintiff's] individualized request or need." *Payan*, at 11 F. 4th 738. The idea is to provide "meaningful access" to services for all. *See Lonberg v. City of Riverside*, 571 F.3d 846, 851 (9th Cir. 2009). However, Title II requires only "reasonable modifications" that do not "fundamentally alter the nature of the service provided." *Tennessee v. Lane*, 541 U.S. 509, 533 (2004) (holding access to courthouse was impeded because disabled litigant could not physically get to the courtroom for hearings); *see also Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1129 (9th Cir. 2001) (hearing-impaired plaintiff sought accommodations from court personnel conducting his proceedings).

Adams has not shown that his requests are for "reasonable modifications" that would not "fundamentally alter the nature" of court proceedings. *Lane*, 541 U.S. at 533. For instance, the requested accommodations include a request to "[s]top and delay proceedings until medical conditions allow," and for judges to "[p]rovide [him with] written questions." Dkt. No. 7 at 21. Adams also argues that the "requirement to undergo duplicative D[omestic] V[iolence] assessments violates ADA protections." *Id*. But he cites no precedent suggesting that such requests are reasonable accommodation requests, or that refusing to provide such accommodations would constitute denial of court access. To be sure, Adams has repeatedly appeared in King County Superior Court—both with and without an

ORDER - 8

attorney—after receiving accommodations that include breaks during hearings and the ability to have a support person present with him. This fact undercuts his theory that his access to the courts has been restricted due to a disability. Dkt. Nos. 1 at ¶¶ 17–18; 7 at 14.

On this record, the Court finds that Adams is unlikely to succeed on his claims, and thus a TRO is inappropriate.

**2.4  Adams may not represent his minor child, A.A.**

Adams tries to represent his minor child in this litigation. *See* Dkt. No. 1. But he does not claim to be an attorney. As a non-attorney, he cannot represent other people, including his children. *Johns v. Cnty. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) ("A non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child" because "it is not in the interest of minors . . . that they be represented by non-attorneys" (cleaned up)). While there are rare exceptions to this rule, none apply here. Thus, the Court FINDS that Adams's minor child—A.A.—is not a party to this case. *See Johns*, 114 F.3d at 877.

### 3.  CONCLUSION

Accordingly, Adams's amended motion for restraining order, Dkt. No. 4, is DENIED, and his motions for temporary restraining orders at Dkt. Nos. 2 and 3 are DENIED AS MOOT. The Clerk of the Court is DIRECTED to AMEND the caption in this matter to remove A.A.

ORDER - 9

Dated this 19th day of November, 2025.

                                                             /s/ Jamal N. Whitehead
                                                            Jamal N. Whitehead
                                                            United States District Judge